# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

───────────────────────────────────────────────

KENNETH P. MCGOWAN,

        Petitioner,

v.                                                      Case No. 10-CV-382

WILLIAM POLLARD,

        Respondent.

───────────────────────────────────────────────

## ORDER

On May 4, 2010, the petitioner, Kenneth P. McGowan ("McGowan"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket #1). On May 19, 2010, this court issued an order requiring the respondent, William Pollard ("Pollard"), to file an answer to Mr. McGowan's petition by June 19, 2010. (Docket #4). Prior to the deadline to file an answer, the respondent, knowing that he would be unable to adequately respond to Mr. McGowan's petition within the time allotted by the court, asked for a brief extension of time. (Docket #7). The court granted the respondent's request (Docket #8), and the respondent's initial response to Mr. McGowan's petition was a motion to dismiss the petition for failure to state a claim made pursuant to Fed. R. Civ. P. 12(b)(6).[1] (Docket #12).

---

[1] Despite the petitioner's protests in his latest submission to the court, using Fed. R. Civ. P. 12(b)(6) as the procedural vehicle to answer a habeas petition is nothing terribly novel. *See generally Lonchar v. Thomas*, 517 U.S. 314, 325, 116 S. Ct. 1293 (1996) (holding that the "Habeas Corpus Rules . . . provide district courts with ample discretionary authority to tailor proceedings to dispose . . . of habeas petitions that lack substantial merit," even beyond Rule 4's contours); *see, e.g., Morales v. Lundquist*, No. 06-CV-600, 2007 U.S. Dist. LEXIS 24522 (E.D. Wis. Mar. 30, 2007) (evaluating a Fed. R. Civ. P. 12(b)(6) motion to dismiss a habeas petition).

As detailed in this court's previous orders, the petitioner's inaction following the filing of the motion to dismiss wholly derailed this case. According to the local rules, the petitioner had twenty-one days to file a response to the respondent's motion to dismiss. *See* Civil L.R. 7(b). Thus, Mr. McGowan had until August 19, 2010, to file a response. *Id.;* Fed. R. Civ. P. 6(d). That date came and went, and the court heard nothing from Mr. McGowan. On August 23, 2010, the petitioner submitted a motion for an extension of time to answer the motion to dismiss. (Docket #15). The motion was dated "August 15, 2010," but Mr. McGowan did not submit any sort of evidence, such as a declaration or notarized statement, that his motion was timely filed, a prerequisite for Mr. McGowan to receive the benefit of the prison mailbox rule. *Ingram v. Jones*, 507 F.3d 640, 645 (7th Cir. 2007). Mr. McGowan's assertion that he mailed his motion on August 15, 2010 was remarkable, given that: (1) the motion took a week and a half to arrive at the courthouse; and (2) the petitioner was held in Green Bay, Wisconsin, less than two hours from the Milwaukee Federal Courthouse.[2] Despite these misgivings, the court gave Mr.

---

[2] The petitioner's assertion that it took a week and a half for his motion to arrive at the courthouse is even more remarkable given that Mr. McGowan's original petition was allegedly filed on April 30, 2010, and was docketed merely four days later to the court on May 4, 2010. (Docket #1). Such a short time frame between mailing and docketing is far more typical with regard to mailings from the Green Bay Correctional Institute. The court notes that there is usually only a two to three day delay between when a filing is mailed from the Green Bay Correctional Institute and when that filing arrives at this courthouse. *See, e.g., Anderson v. Pollard,* No. 10-CV-0986, Docket #1 (petition mailed on November 1, 2010 is docketed by the clerk of the court on November 4, 2010); *Evans v. Pollard,* No. 10-CV-0804, Docket #1 (complaint mailed September 14, 2010, is docketed by the clerk of the court on September 17, 2010); *Blanck v. Pollard*, No. 09-CV-0536, Docket #1 (petition mailed on May 26, 2009, is docketed by the clerk of the court on May 28, 2009). In fact, Mr. McGowan's filings for an extension of time were the only filings from Green Bay that this court could find that took more than four days to arrive at this courthouse. In sum, it would be truly extraordinary if Mr. McGowan's motion was mailed when he said it was mailed.

McGowan the benefit of the doubt and assumed his motion for an extension of time was filed before the deadline to answer the motion to dismiss was due. Accordingly, the court examined his motion for an extension of time under the rubric of whether there was "good cause" for the extension of time.[3] Finding good cause, the court extended the time for Mr. McGowan to reply to the respondent's motion to dismiss until September 6, 2010. (Docket #16). This extension provided Mr. McGowan with the benefit of forty-two days to file a response to the motion to dismiss, double the time allotted under the local rules.

September 6, 2010, passed without a response from Mr. McGowan. In a motion dated "September 6, 2010"[4] but docketed September 15, 2010, the petitioner asked the court for an additional twenty days to file a response to the respondent's motion to dismiss. (Docket #17). In his motion, Mr. McGowan revealed to the court that in the time that had elapsed since the motion to dismiss was filed and since the court granted the petitioner's first motion for an extension of time, Mr. McGowan had not worked on a response to the motion to dismiss. Instead, the petitioner decided to do absolutely nothing between the time the motion to dismiss was submitted and the time the petitioner received the court's order granting the extension of time to respond to the motion to dismiss. (Docket #17 at ¶ 3). When the petitioner received

---

[3] Had the court not given such a generous construction to when Mr. McGowan's motion was filed, the petitioner would have had to demonstrate "excusable neglect" for failing to file the motion in a timely fashion, Fed. R. Civ. P. 6(b)(1)(B), a more rigorous burden than the "good cause" standard needed to normally extend a deadline. *See Parke-Chapley Constr. Co. v. Cherrington*, 865 F.2d 907, 910 (7th Cir. 1989).

[4] Again, Mr. McGowan did not submit any evidence that he actually submitted his motion for an extension of time on that date.

the court's August 30, 2010 order, the petitioner sent the order to a fellow inmate, hoping that the fellow inmate would craft a timely response to the motion to dismiss. To Mr. McGowan's detriment, his fellow inmate did not "focus on [the] petitioner's case" during the forty-two days Mr. McGowan had to respond to the motion to dismiss. (Docket #17 at ¶ 4).

On September 28, 2010, this court granted in part and denied in part the petitioner's second request for an extension of time. (Docket #19). In that order, the court scolded Mr. McGowan for not submitting any evidence that indicated when he filed his motions with the court.[5] The court also noted that Mr. McGowan's excuses for why he needed an extension of time "belie[d] logic," in that the petitioner's "excuses" were a tacit admission that he had forgone all efforts to prosecute his case for the months of August and September. (Docket #19 at 2). However, the court, noting that denying the petitioner's request for a further extension of time "would effectively end Mr. McGowan's case," granted the petitioner ten extra days from the date of the order in which to file a response to the motion to dismiss. (Docket #19 at 2). The court noted in the September 28, 2010 order that "no further extensions [would] be granted" regarding the response to the motion to dismiss. (Docket #19 at 3). The order closed clearly warning Mr. McGowan that if he did "not file a timely response, the court will have no choice but to dismiss the case for want of prosecution." (Docket #19 at 3).

---

[5] Even Mr. McGowan's latest submissions to the court have not included any evidence of when he mailed the motion.

Ten days following the September 28, 2010 order, the court had still not heard a word from Mr. McGowan. The court waited several weeks for a response from the petitioner, but to no avail. Nearly three months after the motion to dismiss was filed, the court, on October 21, 2010, true to its earlier warning, dismissed the case for want of prosecution. (Docket #20). Two weeks later, and forty-nine days since his last communication with the court, Mr. McGowan filed a motion for reconsideration of the court's October 21, 2010 order. (Docket #20). The following day, on November 4, 2010, the petitioner finally filed his response to the motion to dismiss, two and a half months after the response was originally due. The court issues this order to resolve the pending motion for reconsideration.

The first issue presented is how Mr. McGowan's motion ought be construed. Given that the motion was filed within twenty-eight days after the entry of judgment, the motion could potentially be viewed as a "motion to alter or amend a judgment" under Fed. R. Civ. P. 59(e), or potentially one made pursuant to Fed. R. Civ. P. 60, which provides for relief from a judgment or an order. The petitioner does not "label" his motion as being made pursuant to a particular rule, and, even if he did, such a label would not be dispositive to any construction given by the court. *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). Rather, "it is the substance, rather than the form, of a post-judgment motion that determines the rule under which it should be analyzed." *Id.* ("Neither the timing of the motion, nor its label (especially when drafted by a pro se litigant), is dispositive with respect to the appropriate characterization of the motion."). Courts invoke "Rule 59(e) only to support

reconsideration of matters properly encompassed in a decision on the merits." *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 451 (1982). The Seventh Circuit has noted that Rule 59(e) is properly used to "direct a court's attention to matters such as newly discovered evidence or a manifest error of law or fact," but is not to be invoked to "raise novel legal theories that a party had the ability to address in the first instance." *Russell v. Delco Remy*, 51 F.3d 746, 749 (7th Cir. 1995); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) ("A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension") (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983)).

In this case, the petitioner's submission to the court does not take umbrage with the underlying legal rationale for the court's October 21, 2010 order. (Pet'r's Br. at 2-3) ("I am asking . . . that you please reinstate my motion . . . I have myself to blame for the bad decisions and mistakes I made.") The self-described purpose of the motion is to "explain" why it "took so long" to respond to the motion to dismiss. *Id.* at 2. The issues the petitioner raises in his motion are collateral to the substance of the court's underlying judgment, as Mr. McGowan readily concedes in his motion that he did not submit his response to the motion to dismiss within the time allotted by the court and that the court was within its discretion in dismissing the case for want of prosecution. Instead, the motion is premised on the argument that the court

should give the petitioner "another chance" to relieve him from the underlying judgment, which resulted from the petitioner failing to adhere to the court's deadlines. In short, Mr. McGowan is not arguing that the court misunderstood the petitioner or that the court made some sort of fundamental error of law or fact, and, therefore, his motion cannot fall within the contours of Rule 59(e). *Russell,* 51 F.3d at 749. Moreover, the court notes that Rule 59(e) is not a "vehicle for a party to undo its own procedural failures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *see also Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) ("Boyd's motion is simply a plea for the district court to excuse his neglect in prosecuting this case; as such, the motion advances no grounds to support Rule 59(e) relief."). Instead, the court will construe the petitioner's motion as one made pursuant to Fed. R. Civ. P. 60(b).

Fed. R. Civ. P. 60(b) is an extraordinary remedy "designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law." *Russell,* 51 F.3d at 749. A court may grant Rule 60(b) relief only "under the particular circumstances listed in the text of the rule." *Id.* Moreover, Rule 60(b) motions are not meant to correct legal errors made by the district court. *See Marques v. Federal Reserve Bank of Chicago*, 286 F.3d 1014, 1017-18 (7th Cir. 2002) ("A legal error by the district court is not one of the specified grounds for [a Rule 60(b)] motion. In fact it is a forbidden ground."). "In cases involving an underlying dismissal for failure to prosecute . . . Rule 60(b) relief is warranted if a party can demonstrate 'extraordinary circumstances that create a substantial danger

that the underlying judgment was unjust.'" *Cohen v. Hoyer*, 32 Fed. Appx. 755, 759 (7th Cir. 2002) (quoting *Dickerson v. Bd. of Educ.*, 32 F.3d 1114, 1116 (7th Cir. 1994)). The court broadly notes that this court has "discretion piled on discretion" in choosing whether or not to reinstate a case dismissed for want of prosecution Rule 60(b). *Tango Music, L.L.C. v. Deadquick Music, Inc.*, 348 F.3d 244, 248 (7th Cir. 2003).

Mr. McGowan's motion broadly argues that he should be relieved from the judgment this court issued on October 21, 2010, because of the trials and tribulations he has had as a *pro se* litigant who is incarcerated in state prison. Specifically, the petitioner states that, because he does not "know law," he opted to rely on a prisoner in a different correctional institution to prepare his legal documents, resulting in several delays. (Pet'r's Br. at 1). Mr. McGowan further contends that he was delayed in filing because of difficulties he had with: (1) the prison notary; and (2) making a copy of his response brief, given the restrictions on his ability to do so in prison. *Id.* at 2. The petitioner concludes that it was not until October 22, 2010, that his response brief was ready for submission to the court.

The court finds that the petitioner has not demonstrated the existence of an "extraordinary circumstance" such that there is a "substantial danger that the underlying judgment was unjust." *Cohen*, 32 Fed. Appx. at 759. In fact, the petitioner's submission begs more questions than it answers. The court is still puzzled why the prisoner did not begin to work on his response brief until mid-October of this year, even though the motion to dismiss was filed in July. Moreover,

the petitioner fails to explain why he opted to continue to rely on a prisoner from a different prison to prepare his legal documents even though that prisoner repeatedly failed to help the petitioner abide by the deadlines imposed by this court. Additionally, the petitioner's motion begs the question as to why he opted to not communicate with the court in any capacity – such as a letter similar to the one he submitted to the court on November 3, 2010 – until the court dismissed his case. The petitioner's motion also does not explain why he waited two weeks after receiving the court's order of dismissal to respond to it.[6] In short, the questions raised by Mr. McGowan's motion reinforce the court's earlier conclusions that the petitioner has not been serious in pursuing this litigation and, indeed, appears only willing to proceed with his case under his own terms and time line.

More importantly, Mr. McGowan's motion does not raise any sort of "extraordinary circumstances" suggesting that the underlying judgment was unjust. *Cohen*, 32 Fed. Appx. at 759. The problems Mr. McGowan raises with regard to why he had difficulties in prosecuting his claim are no different than any other prisoner who files a habeas petition. *Cf. Montenegro v. United States*, 248 F.3d 585 (7th Cir. 2001) (finding that a prisoner's "limited education" and "lack of knowledge of the . . . legal system" and "being transferred from one prison to another" was not an "extraordinary circumstance" justifying tolling of a statute of limitations) (*overruled on other grounds by Ashley v. United States,* 266 F.3d 671 (7th Cir. 2001). The fact

---

[6] In fact, Mr. McGowan's tales about his difficulties with the prison notary make little sense given that even in his latest submission to the court he fails to have any sort of affidavit included with his brief that would need to be notarized.

-9-

that *pro se* prisoners regularly prosecute their habeas petitions in this very court in a timely fashion manifests the utter banality of the issues Mr. McGowan claims prevented him from prosecuting his claim.[7]

Moreover, the circumstances that the petitioner cites as reasons for the court to reinstate his petition are a product of his own decisions. While a state cannot deny to a prisoner the assistance of a fellow inmate, *Johnson v. Avery,* 393 U.S. 483, 490, 21 L.Ed. 2d 718 (1969), the prisoner does not have a constitutional right to counsel "when mounting collateral attacks upon their convictions." *Pennsylvania v. Finley,* 481 U.S. 551, 555, 95 L. Ed. 539 (1987). Indeed, the petitioner is responsible for the quality of advice or services that he receives from his fellow inmate. *Coleman v. Thompson*, 501 U.S. 722, 754 (1991). Here, at best for the petitioner, the court finds that Mr. McGowan made a very poor choice in continuing to rely on an inmate to prepare his legal documents when that inmate repeatedly ignored this court's deadlines. Ultimately, "the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation." *Id.; cf. Tango Music, L.L.C.,* 348 F.3d at 247 (holding that a litigant "has to take responsibility for the actions of its agents, including the lawyers whom it hires."). To grant Mr. McGowan's motion would be tantamount to rewarding his poor decision of putting the fate of his habeas petition in the hands of an unreliable inmate.

---

[7] Moreover, the court notes that Mr. McGowan, during his sentencing in his state court conviction, openly and freely stated that he held "full responsibility for" his crime. (Docket #14 Ex. J). No injustice, such as denying habeas relief to someone who is "actually innocent," will be done by this court denying Mr. McGowan's motion for reconsideration.

The court does note that it is the "well-established duty of the trial court to ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration," which includes taking "appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds." *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). However, in this case, the court took considerable measures to ensure that Mr. McGowan's petition was decided on its merits, including ignoring the seeming tardiness of the petitioner's two motions for an extension of time, granting in part both of the late motions for an extension of time, giving Mr. McGowan an explicit warning that his case would be dismissed if he did not submit his response to the motion to dismiss, and waiting several weeks after the final deadline had passed to actually dismiss the case. *See Brown v. Altman*, No. 92-4060, 1995 U.S. App. LEXIS 9156, at *5-6 (7th Cir. Apr. 18, 1995) (finding that a district court who granted a *pro se* prison litigant several extensions of time to respond to a dispositive motion and provided an explicit warning of dismissal before dismissing the case did not abuse its discretion with its final order). As the court noted earlier in this order, Mr. McGowan was effectively allotted three and a half times what any other litigant would have had to respond to a motion to dismiss.[8] The petitioner ultimately did not take advantage of the opportunities this court afforded him, and Mr. McGowan did

---

[8] Even Mr. McGowan concedes that the court has been "extremely generous" with him. (Pet'r's Br. at 3).

not heed the court's warnings regarding a dismissal for want of prosecution. Accordingly, McGowan finds himself in the state he is today.

Moreover, the petitioner's *pro se* status does not excuse him from complying with the orders of this court. *See Brown,* 1995 U.S. App. LEXIS 9156, at *6; *see also Williams-Guice v. Board of Educ. of City of Chicago*, 45 F.3d 161, 164 (7th Cir. 1995) (holding that "even uncounseled litigants must act within the time provided by statues and rules."). Mr. McGowan's case is not the only case on this court's busy docket, and this court does not have the luxury of indefinitely waiting for litigants to respond to pending dispositive motions. As the Seventh Circuit recently commented, a "district judge need not wait forever." *FM Indus. v. Citicorp Credit Servs.*, 614 F.3d 335, 338 (7th Cir. 2010). "A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996).

Additionally, the court has deep concerns regarding the future of this case if the court did grant the petitioner's motion and reinstated Mr. McGowan's petition. Thus far in the litigation, the petitioner has repeatedly ignored the court's deadlines to respond to motions and the court's instructions regarding what to submit with his motions. Mr. McGowan has opted to use a rather unreliable inmate to craft and file his submissions to the court, and the petitioner apparently expects the court to wait patiently for Mr. McGowan to respond to pending motions seemingly whenever he feels like it. To reinstate the petitioner's case would make a mockery out of this court's repeated warnings regarding the consequences to Mr. McGowan's lack of

diligence. Moreover, in the best case scenario for the petitioner, if this court rules on the merits of the motion to dismiss and resolves the motion in favor of Mr. McGowan,[9] the court would have absolutely no confidence that the petitioner would comply with any future deadlines this court sets in this matter. No judicial process can proceed under such circumstances.

As a final matter, the court must determine whether to grant or deny McGowan a certificate of appealability. Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." This requirement applies to an appeal from a decision denying a habeas petition, as well as to an appeal from an order denying a Rule 60(b) motion. *West v. Schneiter*, 485 F.3d 393, 394 (7th Cir. 2007). To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

---

[9] For the reasons stated above, the court will not reach the merits of Mr. McGowan's petition in this order. Having said that, the issues raised in the respondent's motion to dismiss are fatal. The petitioner's first ground for relief, while couched in terms of a "due process" violation, merely complains about irregularities with the state of Wisconsin's "no-merit" appeal review, which, in and of itself, does not raise a cognizable claim for habeas relief. *See Coleman v. O'Leary,* 845 F.2d 696, 699-700 (7th Cir. 1988) (holding that federal courts are not "at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which [a federal court] might adopt and then set up our interpretation as a basis for declaring that due process has been denied.") (internal citations omitted). Moreover, Mr. McGowan's remaining claims for relief do not appear to have been fairly presented to the Supreme Court of the State of Wisconsin, resulting in a procedural default. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006). Finally, the petitioner cannot establish "cause" to excuse his procedural default or that a "fundamental miscarriage of justice" would occur if the court did not rule on the merits of his remaining claims.

presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue, additional argument is not necessary here. Given the record before the court, no reasonable jurist would find it debatable whether this court was correct in its ruling on the present motion. As a consequence, the court must deny a certificate of appealability as to the petitioner's motion.

Accordingly,

**IT IS ORDERED** that the petitioner's motion for reconsideration (Docket #22) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to the petitioner's motion be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 6th day of December, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge